FILED

12/17/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0127

DA 23-0127

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 305

STATE OF MONTANA,

       Plaintiff and Appellee,

   v.

CHRISTOPHER ROBIN LEDEAU,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-21-746
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Tammy Hinderman, Appellate Defender, Michael Marchesini, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

           Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

           Joshua A. Racki, Cascade County Attorney, Ryan Ball, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  November 27, 2024

Decided:  December 17, 2024

Filed:

                                    Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Christopher Ledeau (Ledeau) appeals from the December 27, 2022 Sentencing Order, Judgment, Bond Exoneration, & Order to Close issued by the Eighth Judicial District Court, Cascade County, sentencing him for Partner or Family Member Assault (PFMA), a felony. The District Court imposed electronics search and intimate partner disclosure probation conditions to which Ledeau objected and now appeals.

¶2 We restate the issue on appeal as follows:

*Whether the District Court abused its discretion when it imposed sentencing conditions permitting search of Ledeau's electronic devices and disclosure of his intimate partner relationships.*

We reverse and remand to strike conditions 29 and 31 from the Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On October 25, 2021, Ledeau was charged with Burglary and PFMA. The Information and supporting affidavit asserted that on September 23, 2021, Ledeau went over to his ex-girlfriend's home and demanded she let him in. When she did not, he threatened that he would start breaking her windows if she did not let him in. He then threw a rock through one of her windows and then broke into her home through another window. While he was doing so, his ex-girlfriend, M.E., fled her home screaming for help. On June 7, 2022, Ledeau pled guilty to the PFMA charge pursuant to a plea agreement which included dismissal of the burglary charge. At the July 19, 2022 sentencing hearing, the State requested the District Court impose specific conditions developed as an Adult Probation and Parole (AP & P) pilot program in the Eighth Judicial District related to domestic violence offenders. Ledeau objected to these probation conditions, asserting no

2

evidence was provided with regard to any peer reviewed studies, nor any actual evidence that the conditions were evidence-based in reducing future domestic violence. Ledeau also asserted the conditions were overly broad and vague and did not have a nexus to the particular context of Ledeau's offense. At sentencing, the District Court imposed a 3-year commitment to the Montana Department of Corrections, with all but 30 days suspended consecutive to Ledeau's revocation disposition in Cause No. DDC 20-275. The District Court imposed condition 14 requiring Ledeau to register as a violent offender and condition 23 precluding Ledeau from knowingly having "any contact, oral, written, electronic or through a third party, with the victim(s) unless such contact is voluntarily initiated by the victim(s) through the Department of Corrections." With regard to the pilot conditions 29-31, the District Court orally expressed, "I'm not comfortable with (29), (30), or (31) and I believe [defense counsel has] raised substantial questions about each one of them" but imposed them anyway, noting that if it did not "we don't get any input from the Montana Supreme Court on whether these are legal[.]" In its sentencing order the District Court again iterated, "these conditions are new, potentially problematic in multiple ways, and have not yet been litigated in the Supreme Court. All else being equal, the [c]ourt might well refuse to adopt one or more of them. But the cost of doing so would be to deprive AP&P of the chance to litigate them in the Supreme Court. The [c]ourt accordingly overruled Mr. Ledeau's objections and adopted them." The District Court encouraged Ledeau to appeal imposition of the pilot conditions summarizing, "[a]nd then, I'll be on the receiving end of a decision that says, I got this wrong." Ledeau now appeals the imposition of conditions 29 and 31. Additional facts will be discussed as necessary below.

3

## STANDARD OF REVIEW

¶4 "We review a condition imposed in a criminal sentence for legality—whether the sentence is within statutory parameters." *State v. Johnson*, 2023 MT 143, ¶ 6, 413 Mont. 114, 533 P.3d 335 (citing *City of Billings v. Barth*, 2017 MT 56, ¶ 8, 387 Mont. 32, 390 P.3d 951). If we determine the sentence conditions are legal, we review the reasonableness of the conditions or restrictions imposed on the sentence for an abuse of discretion. *Johnson*, ¶ 6 (citing *State v. Nauman*, 2014 MT 248, ¶ 8, 376 Mont. 326, 334 P.3d 368). An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *State v. McLaughlin*, 2009 MT 211, ¶ 9, 351 Mont. 282, 210 P.3d 694.

## DISCUSSION

¶5 *Whether the District Court abused its discretion when it imposed sentencing conditions permitting search of Ledeau's electronic devices and disclosure of his intimate partner relationships.*

¶6 "When deferring imposition of sentence or suspending all or a portion of execution of sentence, the sentencing judge may impose on the offender any reasonable restrictions or conditions" including any "reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society[.]" Section 46-18-201(4)(p), MCA. Although this authority is broad, it is not limitless. To be reasonably related to the objectives of rehabilitation and protection of the victim and society any restriction or condition must correlate or connect to the offense for which the defendant is being sentenced—there must be a nexus between the condition and the offense. *State v. Ashby*, 2008 MT 83, ¶ 15, 342 Mont. 187, 179 P.3d 1164. To establish a "nexus" the State must

4

demonstrate a logical relationship between the probation condition and "the particular context of an offender's crime or the unique background, characteristics, or conduct of the offender." *State v. Zimmerman*, 2010 MT 44, ¶ 17, 355 286, 228 P.3d 1109 (collecting cases). "A court may impose offender-related conditions only when 'the history or pattern of conduct to be restricted is recent, and significant or chronic.'" *State v. Stiles*, 2008 MT 390, ¶ 10, 347 Mont. 95, 197 P.3d 966 (quoting *Ashby*, ¶ 15). "'Overly broad or unduly punitive conditions are not reasonable' restrictions or conditions authorized by § 46-18-201, MCA." *Johnson*, ¶ 7 (quoting *State v. Coleman*, 2018 MT 290, ¶ 6, 393 Mont 375, 431 P.3d 26). "As a general rule, we will affirm a restriction or condition imposed pursuant to this statutory authority so long as the restriction or condition has some correlation or connection—i.e., nexus—to the underlying offense or the offender himself or herself. If the restriction or condition at issue is overly broad or unduly punitive, or if the required nexus is absent or exceedingly tenuous, we will reverse." *Johnson*, ¶ 7 (quoting *State v. Melton*, 2012 MT 84, ¶ 18, 364 Mont. 482, 276 P.3d 900) (internal quotation marks and citation omitted).

¶7     We now turn to conditions 29 and 31 at issue herein. Condition 29 provides:

> Probation and Parole Officer may conduct a search of electronic devices, to include, cell phone, personal computer, and social media, if reasonable suspicion exists that the Defendant is attempting to contact the victim in violation of the Defendants conditions of supervision.

Ledeau asserts this condition is not reasonably related to the goals of supervision, is overly broad, has no nexus to the particulars of his underlying PFMA, is not reasonably limited in scope, and violates his constitutional protection against unreasonable searches and

5

seizures.  The State argued for imposition of this condition on Ledeau as generally speaking there is an increasing number of violent offenders now reaching out through phone, social media, and electronic means to contact their victims.  The State also generally noted that "community corrections programs with specialized domestic violence offender supervision strategies have positive benefits in reducing domestic violence recidivism," citing Andrew R. Klein et al, *Evaluation of the Rhode Island Probation Specialized Domestic Violence Supervision Unit*, National Institute of Justice Office of Justice Programs U.S. Dep't of Justice (2005), https://perma.cc/697H-PR2R.[1]  This paper provides a general overview of the Rhode Island Probation Specialized Domestic Violence Supervision (DVS) program.  As compared to regular tract probation, the DVS program involved greater probation contact with offenders in the program, victims were more likely to be contacted by probation, and probation officers were more likely to return probationers to court for technical violations.  No mention whatsoever is made as to the conditions of supervision imposed nor the imposition of any conditions similar to conditions 29 and 31 at issue here.  Other than a general finding that specialized DV supervision programs can show positive

---

[1] Based on this paper, the State asserts that generally specialized domestic violence offender supervision strategies can have positive benefits in reducing recidivism, it does not address the growing body of research that conditions should not be imposed unless research shows they have the intended effects as over-supervising individuals has the potential to bring about unintended consequences.  "Probation is now overused as a sanction, and the conditions of probation are often overly focused on monitoring and compliance to the detriment of rehabilitation and promoting successful re-entry."  Arthur L. Rizer et al, *Realigning Probation with Our Values*, National Affairs (2020), https://perma.cc/ZX8K-MPNB.  As Rizer et al note, "[a] growing body of research suggests that placing low-risk individuals on standard probation results in no additional gains to public safety when compared to less-intensive probation or complete diversion from the system. Additionally, even when individuals deemed to be a higher risk are placed on probation, the form of probation administered can often be overly intensive, burdensome, and expensive without bringing any additional public-safety benefits."

benefits in reducing domestic violence recidivism, the State did not provide any data or research demonstrating key components of a DVS program necessary to reduce domestic violence recidivism or demonstrating the particular conditions set forth in conditions 29 and 31 reduced recidivism or had any greater impact on rehabilitation than other narrower in scope probation conditions such as registration as a violent offender, participation in counseling assessment and counseling with a focus on violence, and no-contact with the victim limitations.

¶8 While condition 29 may be appropriate with certain domestic violence offenders based on the context of an offender's crime or the unique background, characteristics, or conduct of the offender, the record does not support its imposition in this case. First, as written, condition 29 triggers a limitless, overbroad warrantless search not limited in device or application of an offender's electronic devices, to include, cell phone, personal computer, and social media search upon an "attempt to contact the victim" regardless of how that attempt is made. For example, were Ledeau to go to M.E.'s residence while she is not home, knock on the door, and then leave when she does not answer, probation would be permitted to search the entire contents of his cell phone, his computer, and his social media accounts.

¶9 "We have recognized a reasonable expectation of privacy in cell phone communications." *State v. Mefford*, 2022 MT 185, ¶ 15, 410 Mont. 146, 517 P.3d 210. In *Mefford*, we recognized that "[c]ell phones have become storage devices for all manner of private information" and are a portal into a person's life which may contain hundreds of thousands of pictures and information about a person's "health and activity, dating, video

7

streaming, mobile shopping, banking, and password storage." *Mefford*, ¶ 15. We also noted the United States Supreme Court's recognition that a cell phone search would typically be far more exhaustive than a search of one's home as it contains a "'broad array of private information never found in a home in any form.'" *Mefford*, ¶ 15 (quoting *Riley v. California*, 573 U.S. 373, 396-97, 134 S. Ct. 2473, 2491 (2014)). The same can be said of other electronic devices such as computers and tablets. Limitless search of Ledeau's electronic devices when there is no evidence he has used electronic communication in connection to the underlying offense is overly broad. Further, even had there been some evidence Ledeau attempted to contact M.E. via cell, social media, or other electronic communication, the scope of the search permitted under condition 29—*all* areas of *all* electronic devices—is likewise overbroad.

¶10    Next, while it may be accurate that in general more violent offenders are using phone, social media, and electronic means to contact their victims, this generalization does not supply a nexus between condition 29 and Ledeau's underlying offense. There is no evidence in the record that Ledeau has ever used electronic means to unlawfully contact, harass, or intimidate M.E. and his offense as charged and pled to did not even tangentially involve the use of electronic devices. The State asserted that without this condition, the State would have no way of knowing if Ledeau attempted to contact M.E. and could not ensure compliance with the no contact condition. This is not accurate. First, the State could contact M.E. at any time to inquire as to unwanted contact. Further, condition 23, precluding Ledeau from knowingly having "any contact, oral, written, electronic or through a third party, with the victim(s) unless such contact is voluntarily initiated by the

8

victim(s) through the Department of Corrections"—which Ledeau does not challenge on appeal—already provides a means for search of an electronic device or social media app were Ledeau to reach out to M.E. using an electronic device or social media app. Probationers, like Ledeau, have a diminished expectation of privacy and are subject to warrantless searches of their property when "the probation officer has reasonable cause to suspect that the probationer may be in violation of the probationer's conditions of supervision[.]" *Mefford*, ¶ 32. The warrantless search, however, must be limited in scope to the reasonable suspicion that justified it in the first place. *Mefford*, ¶ 32. Were Ledeau to contact M.E. through electronic means or social media app, M.E. may report such to the State and demonstrate such via her receipt of the electronic communication. The State could effectuate a limited, warrantless probationary search of a device or social media account limited to communications with M.E. to establish the violation of condition 23— the no-contact condition. The State could also seek a search warrant, appropriately limited in breadth and scope, to the particular device or social media account. The State does not need a blanket search of all areas of all Ledeau's electronic devices to enforce condition 23.

¶11 Next, we turn to condition 31. Condition 31 provides:

> The Defendant shall sign and abide by an Intimate Partner Disclosure and an Offensive Contact Contract provided by his/her Probation and Parole Officer if required by his supervising Officer.

This condition requires an offender to provide his probation officer with the full name, telephone number, and address of any person that the probationer is romantically involved with (dating, girlfriend, wife or other sexual/romantic relationship) including anyone the

9

probationer becomes involved with in the future. It requires the probationer to disclose the extent and nature of the probationer's domestic violence to his current intimate partner including all public information including arrests, restraining orders and violations, stalking orders and violations, and convictions. Pursuant to this condition, AP & P will contact the probationer's intimate partner to verify the probationer completely disclosed all public information relating to the probationer's domestic violence and if the intimate partner wishes to continue a relationship with the probationer, AP & P will provide that person with information about the conditions of the probationer's supervision and available community resources. The condition also requires the probationer to enter into a contract requiring he provide intimate partner contact information and offense and criminal history disclosure.

¶12    Ledeau argues condition 31 is unnecessary as he is already required by condition 14 to register as a violent offender. He also asserts the condition is vague as to the definition of "romantic relationship" and enforcement and punitive in that it inflicts more shame and stigma than the registration requirement already does. Further, Ledeau asserts it violates his right to privacy as well as his right to associate with others without disclosing his private associations to the government. The State argued that domestic violence is often cyclical and repetitive over time from relationship to relationship perpetuated by an imbalance of power and control between the victim and the offender. The State asserts the condition is necessary as without it AP & P does not have the ability to educate the victim about the offender's charged domestic violence and services available. The State also argues that this condition is necessary as it provides education to the defendant in regards to definitions

10

and examples of abusive contact while also ensuring that if the victim in this case is provided enough education and counseling that she moves on.

¶13 This condition implicates constitutional rights not only to a probationer's privacy rights and right of association but to any identified romantic partner's rights as well. It is not necessary, however, to address these constitutional issues in this case. While this condition may be appropriate for certain domestic violence offenders based on the context of an offender's crime or the unique background, characteristics, or conduct of the offender, it is not appropriate as a standard condition for all domestic violence cases and the record does not support its imposition in this case. The State has failed to demonstrate based on the context of Ledeau's crime or his unique background, characteristics, or conduct how this condition is necessary for rehabilitation and protection of the victim and society in addition to conditions 14 and 23.

¶14 Regarding the educational component of the condition, AP & P can certainly provide Ledeau with educational materials about definitions and examples of abusive contact without requiring him to disclose future intimate partners or sign a contract. Additionally, contrary to the State's assertion, it does have the ability to contact M.E. to educate about domestic violence and available services.

¶15 The PSI, the State, and Ledeau assert this is Ledeau's fourth PFMA conviction.[2] The PSI author notes that this offense occurred while Ledeau was on probation for a PFMA

---

[2] This is somewhat inconsistent with Ledeau's criminal history listed in the PSI which indicates 3 prior PFMAs and one felony: 7/28/2013 PFMA, misdemeanor—sentenced 8/14/2015 to 365 days with 355 days suspended; 7/2/2017 PFMA, misdemeanor—sentenced 1/16/2018 to 1 year, all suspended; 7/25/2018 PFMA, misdemeanor—sentenced 11/30/2018 to 1 year with all but 22 hours

and that the victim in this case was the same victim as the case for which he was on probation. Again, while there may be circumstances where imposition of condition 31 is warranted by the probationer's criminal history or pattern of conduct, the relationship, and whether serial victims were involved, the State has failed to demonstrate the nexus or need for this condition in addition to conditions 14 and 23 here. With the exception of knowing that M.E. was also the victim of Ledeau's preceding PFMA, the State did not provide information as to the circumstances of the other PFMAs. The record does not establish the circumstances of the other misdemeanor PFMAs—whether they involved intimate partners versus other family members, if they were intimate partners whether they involved the same or serial victims, their nature, circumstances, or evidence of any power dynamic in the particular relationship. Clearly, M.E. is already aware of Ledeau's PFMAs involving her as the victim and the State is able to contact her to assure Ledeau is not contacting her and to provide her support and referral to community services. Further, Ledeau's probation condition 27, to which he did not object or appeal, requires him to pay for and complete a counseling assessment with a focus on violence, controlling behavior, dangerousness, and chemical dependency as well as complete all recommendations for counseling, referrals, attendance at psychoeducational groups, or treatment, including any indicated chemical dependency treatment, made by the state-approved counseling provider, and complete a minimum of 40 hours of counseling. Except for the intimate partner disclosure and mandated signature on the Offensive Contact Contract, the educational component the

---

suspended; and 1/27/2021 PFMA, felony (DDC 20-725)—sentenced 6/2/2021 to 3 years DOC with all but 30 days suspended.

12

State asserts condition 31 provides is redundant to the requirements of condition 27. Here, condition 31 shames and stigmatizes Ledeau while doing nothing more to improve his rehabilitation.

¶16 Although piloting various probationary conditions may assist AP & P to better understand and inform interventions that could reduce domestic violence recidivism, unless the offender receives a benefit to subjecting him/herself to standard pilot conditions, similar to that received by offenders participating in specialty dockets such as drug treatment courts, there must be a logical relationship between each probation condition and the particular context of an offender's offense or the unique background, characteristics, or conduct of the offender. Further, each condition must not be overbroad or punitive.

## CONCLUSION

¶17 Here, the District Court abused its discretion in imposing probationary conditions 29 and 31 as the required nexus is absent or exceedingly tenuous and both are overbroad and redundant to other probationary conditions imposed, namely conditions 16, 23, and 27.

¶18 Reversed and remanded to strike probationary conditions 29 and 31 from the Sentencing Order and Judgment.

/S/ INGRID GUSTAFSON

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ LAURIE McKINNON

13

Justice Jim Rice concurring in part and dissenting in part.

¶19     I concur with the Court's determination as to Condition 31, but would affirm the imposition of Condition 29, and thus dissent from that determination.  Ledeau has a long history of PFMA convictions, with two of the convictions involving the victim in this case, M.E.  Despite being previously ordered to have no contact with M.E., Ledeau acted in violation of the order.  In my view, it is not unreasonable, and within the sentencing court's broad statutory authority, to impose a search condition of Ledeau's electronic devices as "necessary . . . for the protection of the victim or society," whether or not the current conviction was based upon electronic contact.  Section 46-18-201(4)(p), MCA.  The search condition requires that there first be reasonable suspicion that Ledeau "is attempting to contact the victim in violation of" his conditions of supervision.  Any concern that the Condition could be applied too broadly is speculative but nevertheless insufficient to invalidate the Condition because its application will always be subject to constitutional requirements.  *See State v. Mefford*, 2022 MT 185, ¶¶ 15-17, 410 Mont. 146, 517 P.3d 210.

/S/ JIM RICE

Justice James Jeremiah Shea joins in the concurrence and dissent of Justice Rice.

/S/ JAMES JEREMIAH SHEA

14